UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

N⁰ 06 Civ. 6183 (RJS)
_____

ALPHONSO SIMMONS,

Plaintiff,

VERSUS

COMMISSIONER RAYMOND KELLY, NYPD, JOHN DOE 1, COMMANDER 19TH PRECINCT, JOHN DOE 2, COMMANDER 6TH PRECINCT; JOHN DOE 3, COMMANDER (SHIFT), JOHN DOE 4, SHIFT COMMANDER, DETECTIVE THOMAS HEALY, DETECTIVE GUS BLAIN, DETECTIVE ALBERT RAMOS, DETECTIVE TODD OWEN, DETECTIVE VALASMAKIS MEXTAXIS, DETECTIVE DANIEL CORCORAN, and SGT. PATRICK SANTOLI, individually and in their official capacities,

Defendants.

_____

MEMORANDUM AND ORDER
March 31, 2009
_____

RICHARD J. SULLIVAN, District Judge:

*Pro se* Plaintiff Alphonso Simmons ("Plaintiff") brings this action for injunctive relief and damages pursuant to 42 U.S.C. § 1983, alleging claims of false arrest, false imprisonment, illegal delay in arraignment, and unconstitutional conditions of confinement in connection with his March 20, 2006 arrest and subsequent detention.

Plaintiff names as Defendants New York City Police Department Commissioner Raymond Kelly ("Kelly"), Detectives Thomas Healy ("Healy"), Gus Blain ("Blain"), Albert Ramos ("Ramos"), Todd Olsen ("Olsen"),[1]

---

[1] Defendants note that Defendant Olsen is erroneously named as "Todd Owen" in the Amended Complaint. (Defs.' Mem. at 2 n.1.) Accordingly, the Court will refer to him as "Olsen" for purposes of this

Valsamakis Metaxas ("Metaxas"),[2] Daniel Corcoran ("Corcoran"), Sergeant Patrick Santoli ("Santoli"), and John Does #1-4 (collectively, the "Defendants").

Defendants now move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing, *inter alia*, that Plaintiff improperly seeks to challenge the validity of his conviction, that the principles of *res judicata* and collateral estoppel bar certain of Plaintiff's claims, and that Defendants are entitled to qualified immunity. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

I. BACKGROUND

A. Facts

The following facts are taken from the Amended Complaint ("AC"). The Court will recite only those facts necessary to resolve the instant motions, assumes these facts to be true for the purpose of deciding the instant motions, and must construe them in the light most favorable to Plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

At approximately 10:00 p.m. on March 20, 2006, Plaintiff was arrested on an alleged outstanding warrant by Detectives Owen and Metaxas after a traffic stop for aggressive driving. (AC ¶ II.D, 45; *Id.* Ex. A ¶ 2.) Olsen and Metaxas then placed Plaintiff in handcuffs and transported him to the 19th Precinct of the New York Police Department in Manhattan. (AC ¶ 45.) Once at the 19th Precinct, Plaintiff alleges that he was placed in a cell, alone, without food or water. (*Id.* ¶ II.D.) Plaintiff alleges that he was then informed he had been arrested not on an outstanding warrant, but because a car matching his car was seen leaving the scene of a robbery. (*Id.* Ex. A ¶ 3.)

At 3:00 a.m. on March 21, 2006, while still at the 19th Precinct, Plaintiff requested food from Detective Healy. (*Id.* ¶ 21.) Plaintiff alleges that Healy told Plaintiff he could eat after questioning. (*Id.*) After two sessions of questioning, Plaintiff again asked Healy for something to eat; Healy replied that Plaintiff could "have anything [he] want[ed] once [he was] ready to cooperate." (*Id.* ¶ 22.) At 9:00 a.m. on March 21, 2006, Plaintiff requested food from Detective Olsen, who allegedly responded that he was not the arresting officer. (*Id.* ¶ 27.) When, at noon of the same day, Plaintiff asked Detective Ramos for food, Ramos informed Plaintiff that he could not have food because a line-up was being prepared. (*Id.* ¶ 28.)

Plaintiff alleges that he was held at the 19th Precinct for more than twenty-four hours,[3] then transferred to Central Booking at 100 Centre Street in Manhattan. (*Id.* ¶ 38.) Plaintiff claims he was then held a further twelve hours in the "pens" at Central Booking. At approximately 3:00 a.m. on March 22, 2006, while at Central Booking,

---

Memorandum and Order.

[2] The caption in this action refers to Defendant Metaxas as "Valasmakis Mextaxis." Because, however, both Plaintiff and Defendants refer to him as "Valsamakis Metaxas" elsewhere in their submissions, the Court will adopt that spelling here.

[3] Plaintiff alleges elsewhere in the AC that he was held at the 19th Precinct for "over twenty hours." (AC ¶ 21.) Because on this motion all facts must be construed in the light most favorable to Plaintiff, the Court assumes Plaintiff was held for at least twenty-four hours, though the discrepancy is not ultimately relevant to the outcome here.

Plaintiff was provided with two boxes of cereal and a carton of milk. (*Id.* ¶ 29.)

Plaintiff claims that he was held at the 19th Precinct for more than nineteen hours before he was charged with a crime, and that more than twenty hours from the time of his arrival passed before the felony complaint was signed. (*Id.* ¶ 38.) On March 22, 2006 in the "forenoon," Plaintiff was charged with Attempted Robbery in the First Degree. (*Id.* ¶ 13.) On June 24, 2006, Plaintiff filed a petition for a writ of *habeas corpus* in New York State Supreme Court. (*Id.* ¶ 15.) The petition was denied on July 17, 2006. (*Id.* ¶ 16.) Plaintiff appealed the decision that day, but was notified by the Appellate Department that he could not appeal the denial of his *habeas* petition until he had been sentenced. (*Id.* ¶¶ 16-17.)

On August 30, 2006, Plaintiff was convicted by guilty plea of one count of Attempted Robbery, 1st Degree, and on September 19, 2006 was sentenced to ten years in prison and five years of supervisory release. Plaintiff filed a notice of appeal on September 19, 2006; as of the filing of the instant motion, Plaintiff's appeal was still pending. (*Id.* ¶¶ 18-19.) As of the date of this Memorandum and Order, Plaintiff remains incarcerated at Greenhaven Correctional Facility.[4]

---

[4] The Court takes judicial notice both of Plaintiff's conviction via guilty plea as well as of his continued incarceration. *See Williams v. City of New York*, No. 07 Civ. 3764 (RJS), 2008 WL 3247813, at *2 (S.D.N.Y. Aug. 7, 2008) (taking judicial notice of continued incarceration); *Wingate v. Gives*, No. 05 Civ. 1872 (LAK), 2008 WL 5649089, at *3 n.7 (S.D.N.Y. Apr. 13, 2008) (taking judicial notice of conviction).

B. Procedural History

Plaintiff commenced the above-captioned action on June 21, 2006 — well before his guilty plea and sentencing. On August 14, 2006, the Honorable Kimba M. Wood, Chief District Judge, to whom this case was previously assigned, issued an order directing Plaintiff to submit an amended complaint within sixty days. Plaintiff filed the AC on October 12, 2006. On October 31, 2006, the action was reassigned from the docket of Judge Wood to that of the Honorable Kenneth M. Karas, District Judge. On September 4, 2007, the action was reassigned from the docket of Judge Karas to that of the undersigned. Defendants filed the instant motion on April 14, 2008. The motion was fully submitted on June 17, 2008.

II. STANDARD OF REVIEW

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland*, 448 F.3d at 521.

When considering motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, the Court must accept all well-pleaded allegations contained in the complaint as true, and must draw all reasonable inferences in favor of the plaintiff. *ATSI Commn'cs, Inc. v. Shaar Fund, Ltd*, 493 F.3d 87, 98 (2d Cir. 2007). A plaintiff need not include "heightened fact pleading of specifics" to survive a Rule 12(b)(6) motion, "but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that the "[f]actual allegations" alleged "must

be enough to raise a right to relief above the speculative level"). A plaintiff thus must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

Because Plaintiff is appearing *pro se*, the Court shall "'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("The policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983))).

### III. DISCUSSION

Construing the AC to "raise the strongest arguments it suggests," the Court reads the complaint as alleging four claims: (1) a section 1983 claim for false arrest in violation of Plaintiff's Fourth Amendment rights; (2) a section 1983 claim for false imprisonment in violation of Plaintiff's Fourth Amendment rights; (3) a section 1983 claim for due process violations caused by an unnecessary delay in arraignment; and (4) a section 1983 claim for deliberate deprivation of food and water constituting unconstitutional conditions of confinement in violation of the Fourteenth Amendment.

### A. Defendants Kelly and John Does #1-4

As a preliminary matter, the claims against Defendants Kelly and John Does #1-4 are dismissed for failure to plead personal involvement by these Defendants in the constitutional deprivations of which Plaintiff complains.

To prevail on a claim under section 1983, a plaintiff must establish that he was deprived of a right, privilege or immunity secured by the Constitution and laws by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 47 (1988). It is well established that "the doctrine of *respondeat superior* cannot be used to establish liability [of a supervisory official] under § 1983." *Blyden v. Mancusi*, 186 F. 3d 252, 264 (2d Cir. 1999); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Wright v. Smith*, 21 F. 3d 496, 501 (2d Cir. 1994). Rather, liability under section 1983 turns on a defendant's personal involvement in the alleged constitutional deprivations. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *see also Wright*, 21 F.3d at 501. There are several ways in which the personal involvement of a supervisory official may be established besides direct participation in the complained-of act, including (1) failure to remedy a wrong of which the supervisory official is aware; (2) creation or continuation by the supervisory official of a policy or custom that resulted in the unconstitutional practices;  or (3) gross negligence by the supervisory official in "managing subordinates who caused the

unlawful condition or event." *Williams*, 781 F.2d at 323-24.

Defendant Raymond Kelly is the Commissioner of the NYPD, "with responsibility for operating and maintaining all of its precincts within the City of New York." (AC ¶ 4.) John Does #1-4 are alleged to be "supervisors and or Commanders of the 19th and 6th Precincts." (*Id.* ¶ 41.) Defendants argue that Plaintiff has not alleged the personal involvement of Defendant Kelly in any constitutional deprivations, but rather that Plaintiff "merely provides formulaic and conclusory allegations that" Defendant Kelly "exercised depraved indifference with regard to Plaintiff's rights." (Defs.' Mem. at 17-18 (internal quotations and citations omitted).) In response, Plaintiff concedes Defendants' point, and further concedes that "the allegations against the other supervisors, John Doe 1, 2, and 3, and 4, should also be withdrawn." (Pl.'s Opp'n at 16.)

Because Plaintiff concedes that the AC does not allege Defendant Kelly's or John Does #1-4's personal involvement in the deprivations allegedly carried out by their subordinates (Pl.'s Opp'n at 16), Defendants' motion to dismiss all claims against Defendants Kelly and John Does #1-4 is granted.

### B. False Arrest and False Imprisonment

Plaintiff alleges that Detectives Olsen and Metaxas had no probable cause to detain or arrest him on March 20, 2006, and that, accordingly, he was falsely arrested and imprisoned in violation of his constitutional rights. (AC ¶¶ 43-46.)

#### 1. Applicable Law

As an initial matter, Plaintiff's false arrest and false imprisonment claims can be evaluated as a single claim. *See, e.g.*, *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) ("In New York, the tort of false arrest is synonymous with that of false imprisonment."); *see also Jenkins v. City of New York*, 478 F. 3d 76, 84 (2d Cir. 2007); *Weyant v. Okst*, 101 F. 3d 845, 852 (2d Cir. 1996). A false arrest/imprisonment claim under New York law has four elements: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *see also Weyant*, 101 F. 3d at 853. Privilege may be established by showing the existence of probable cause for the arrest or detainment. *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003). Accordingly, under "New York law, probable cause to arrest is a complete defense to a claim of false arrest." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999). A conviction that survives appeal is "conclusive evidence of probable cause." *Weyant*, 101 F.3d at 852 (internal citations omitted).

#### 2. Analysis

As noted above, the Court takes judicial notice of the fact that Plaintiff pleaded guilty to one count of Attempted Robbery, 1st Degree and, on September 19, 2006 was sentenced to ten years in prison and five years of supervisory release. The Court also takes judicial notice of the fact that Plaintiff remains incarcerated at Greenhaven

Correctional Facility as of the date of this opinion.

A guilty plea is the equivalent of a conviction. *See Saddler v. United States*, 531 F.2d 83, 85 (2d Cir. 1976). Accordingly, a guilty plea that is not overturned on appeal provides conclusive evidence of probable cause and, accordingly, bars a section 1983 claim for false arrest or imprisonment stemming from the conviction at issue. *Hernandez v. City of New York*, No. 00 Civ. 9507 (RWS), 2004 WL 2624675, at *5 (S.D.N.Y. Nov. 18, 2004). Here, as noted above, Plaintiff pleaded guilty, is in the process of appealing his conviction, and remains incarcerated. Plaintiff's conviction has not been overturned on appeal, and thus his standing conviction via a guilty plea provides conclusive evidence of probable cause for Plaintiff's arrest and detainment. Accordingly, Plaintiff's section 1983 claims for false arrest and false imprisonment in violation of his Fourth Amendment rights are dismissed in their entirety. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118-19 (2d Cir. 1995), *cert. denied* 517 U.S. 1189 (1996) (noting that "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause" (citing *Bernard*, 25 F.3d at 102)).

### C. Unnecessary Delay in Arraignment

Plaintiff alleges that he was held more than thirty-six hours before being arraigned, and that this delay in arraignment represents a deprivation of his constitutional rights.[5]

Specifically, Plaintiff contends that the delay in his arraignment violated New York Criminal Procedure Law § 140.20(1), which requires arraignment "without unnecessary delay," and that Defendants' alleged failure to abide by this requirement represents a violation of due process. (*See* AC ¶¶ 34-42, 47-52; *see also* Pl.'s Opp'n at 7, 13-15.)

Because section 140.20(1) does not create a constitutionally-protected right, and because the length of Plaintiff's pre-arraignment detention does not otherwise violate Plaintiff's constitutional rights, Plaintiff's claims relating to any delay in his arraignment are dismissed.

1. Applicable Law

New York Criminal Procedure Law § 140.20(1) provides in pertinent part that:

> [u]pon arresting a person without a warrant, a police officer . . . must . . . without unnecessary delay bring the arrested person or cause him to be brought before a local criminal court and file therewith an appropriate accusatory instrument charging him with the offense or offenses in question.

New York courts have interpreted this statute to mean that any delay over twenty-four hours is presumptively unnecessary.

---

[5] Defendants and Plaintiff dispute the time of Plaintiff's arrest. Defendants claim that Plaintiff was arraigned less than twenty-four hours after his arrest (Defs.' Mem. at 22), while Plaintiff alleges that he was held for more than thirty-six hours before arraignment (AC ¶¶ 34-42, 47-52). Because on a motion to dismiss the Court must accept the facts as presented by Plaintiff to be true, *Cleveland*, 448 F.3d at 521, the Court will evaluate the constitutional implications of a thirty-six-hour delay in arraignment.

6

*People ex rel. Maxian v. Brown*, 561 N.Y.S. 2d 418, 424 (1st Dep't 1990), *aff'd*, 77 N.Y. 2d 422, 426 (N.Y. 1991).

The Second Circuit has held, however, that section 140.20 creates neither a private right of action nor, as argued by Plaintiff (Pl.'s Opp'n at 13), a constitutionally protected liberty interest. *Watson v. City of New York*, 92 F.3d 31, 37 (2d Cir. 1996) (finding "no indication that the New York legislature intended to create a new private right of action in enacting § 140.20" and noting that "[a]mple precedent establishes that a state rule of criminal procedure, such as section 140.20(1), does not create a liberty interest that is entitled to protection under the federal Constitution"); *see also Pugliese v. Nelson*, 617 F.2d 916, 924 (2d Cir. 1980) ("'Although a Due Process Clause liberty interest may be grounded in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that merely establishes procedural protections.'" (quoting *Cofone v. Manson*, 594 F.2d 934, 938 (2d Cir. 1979))).

Although section 140.20 does not create a constitutionally-protected right, there is nonetheless a constitutional right implicated by an undue delay in arraignment: the right of freedom from unreasonable search and seizure created by the Fourth Amendment. *Watson*, 92 F.3d at 38. It is well settled that "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention." *Gerstein v. Pugh*, 420 U.S. 103, 126 (1975). The Supreme Court has held that detentions of up to forty-eight hours generally satisfy the *Gerstein* promptness requirement. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

2. Analysis

The length of Plaintiff's pre-arraignment detention, as alleged in the AC, exceeded the twenty-four-hour limit established by section 140.20. (AC ¶¶ 34-42, 47-52.) Nonetheless, under the law of this Circuit, no constitutionally protected liberty interests were infringed as a result of the violation of the statutorily-established procedures. *See Watson*, 92 F.3d at 38 (noting that "[c]onstitutionalizing every state procedural right would stand any due process analysis on its head" and holding that "[promptness of arraignment] to satisfy the Fourth Amendment . . . is a federal issue that is not affected by the New York Court of Appeals' construction of the phrase "without unnecessary delay" in section 140.20(1)"). Accordingly, the violation of section 140.20(1)'s procedures does not represent a violation of Plaintiff's constitutional rights.

Nor does the delay in arraignment represent a violation of Plaintiff's Fourth Amendment rights. According to the AC, Plaintiff's prearraignment detention was approximately thirty-six hours — safely within the forty-eight hour limit established by *Gerstein* and *County of Riverside*. Accordingly, Plaintiff's claim cannot support an action under section 1983, and Defendants' motion to dismiss Plaintiff's claims regarding unnecessary delay is granted.

D.  Deprivation of Food and Water

Plaintiff alleges that he was deprived of food and water for the approximately thirty hours that he was held in the 19th Precinct station house, and that this deprivation represents an unconstitutional condition of

confinement in violation of the Eight Amendment's prohibition on cruel and unusual punishment. (AC ¶¶ 20-30.)

### 1. Applicable Law

The Eighth Amendment protects convicted prisoners from cruel and unusual punishment, imposing on prison officials a duty to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). As the Second Circuit has noted, the "constitutional standard by which the legality of conditions of confinement for pretrial detainees is to be measured differs from that applicable in the case of sentenced inmates." *Lareau*, 651 F.2d at 102. Thus, "[f]or the former group the test is whether the conditions amount to 'punishment' without due process in violation of the Fourteenth Amendment," while "[f]or the latter, who may be punished, the criterion is whether that punishment is 'cruel and unusual' within the meaning of the Eighth Amendment." *Id.* However, "[a] fortiori, pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners," and accordingly pre-trial detainees have a right to humane conditions of confinement. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).

### 2. Analysis

Courts in this jurisdiction have held that a deprivation of food and water during detention that only lasted a few hours did not rise to the level of a constitutional violation. *Webster v. City of New York*, 333 F. Supp. 2d 184, 199-200 (S.D.N.Y. 2004). On the other hand, a pre-arraignment detainee's allegation that he was deprived of food and water for two-and-a-half days was deemed sufficient to state a claim for violation of his Fourteenth Amendment rights. *Hodge v. Ruperto*, 739 F. Supp. 873, 876 (S.D.N.Y. 1990). The District Court for the District of Puerto Rico found that a seventeen hour deprivation of food and water following an arrest "certainly implicates the Eighth and Fourteenth Amendments." *Tavarez-Guerrero v. Toledo-Davila*, 573 F. Supp. 2d 507, 512 (D.P.R. 2008). The Supreme Court has held that "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs — *e. g.*, food, clothing, shelter, medical care, and reasonable safety — it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

Defendants argue that Plaintiff's deprivation of food and water claim is barred by collateral estoppel based on the dismissal of his petition for writ of habeas corpus. Plaintiff's twelve page Affidavit in Support of Petition for Writ of Habeas Corpus mentions food and water just twice in passing. (*See, e.g.*, AC Ex. A (stating that Plaintiff "was thrown in a cell without food and water and left there for a number of hours").) Deprivation of food and water was not presented as an issue, and so the Court finds this issue was not necessarily decided by the dismissal of the petition.

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the Court finds that Plaintiff has sufficiently pleaded a violation of his due process rights arising from a substantial deprivation of food and water. Accordingly, Defendants' motion to dismiss Plaintiff's claim regarding deprivation of food and water is denied.

### E.  Qualified Immunity

Defendants Healy, Blain, Ramos, Olsen, Metaxas, Corcoran and Santoli argue that they are entitled to qualified immunity, as, even assuming *arguendo* that any violation of Plaintiff's constitutional rights occurred, those rights were not clearly established. (Defs.' Mem. at 20-22.) Because the Court finds that Defendants' qualified immunity defense turns on an issue of material fact that cannot be resolved without discovery, the motion of the remaining Defendants to dismiss on the grounds of qualified immunity is denied.

#### 1.  Applicable Law

"The qualified-immunity doctrine shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65 (2d Cir. 1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  This "immunity protects the official not just from liability but also from suit on such claims, thereby sparing him the necessity of defending by submitting to discovery on the merits or undergoing a trial." *Id*.

#### 2.  Analysis

Defendants assert that Plaintiff was deprived of food and water for approximately ten hours, and that it would not be clear to a reasonable official in a similar position that such conduct would be unlawful. (Defs.' Mem. at 22.)  As the Court must accept the facts as alleged by Plaintiff to be true for purposes of this motion, however, the Court will assume a period of deprivation of approximately thirty hours. (*See* AC ¶¶ 20-30.)

As discussed above, it is well established that depriving a prisoner of food and water for a significant period of time can constitute a violation of the Eighth Amendment.  It is similarly well established that pretrial detainees, through the protections of the Fourteenth Amendment, enjoy rights at least equal to those enjoyed by post-conviction detainees.  *See Bell*, 441 U.S. at 545.  The precise length of a 'significant deprivation' is undefined, but courts have held that a deprivation of as little as seventeen hours has constitutional implications.  *Tavarez-Guerrero,*  573 F. Supp. 2d at 512-13.  Thus the length of Plaintiff's period of deprivation is an issue of material fact that will bear on whether Defendants are entitled to dismissal on qualified immunity grounds.

On a motion to dismiss, a "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see also Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008).  Here, Defendants' qualified immunity defense turns on an issue of material fact that

9

cannot be resolved without discovery, and so, "any ruling regarding the availability of the qualified immunity affirmative defense would be premature at this time." *Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004). The Court therefore denies Defendants' motion to dismiss Plaintiff's claims on qualified immunity grounds.

### IV. CONCLUSION

For the foregoing reasons, all claims against Defendants Kelly and John Does #1-4 are dismissed. Plaintiff's false arrest, false imprisonment and unnecessary delay claims are dismissed as to all Defendants. The motion to dismiss Plaintiff's constitutional deprivation claim is denied as to Defendants Healy, Blain, Ramos, Olsen, Metaxas, Corcoran and Santoli, as is the motion of those same Defendants for dismissal on qualified immunity grounds.

The Clerk of the Court is respectfully directed to terminate the motion docketed as Document No. 29.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: March 31, 2009
New York, New York

\*\*\*

Plaintiff Alphonso Simmons appears *pro se*. Defendants are represented by Michael Cardozo, Esq. and Douglas Heim, Esq., New York City Law Department Office of the Corporation Counsel, 100 Church Street, New York, NY 10007.